Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/21/2020 08:09 AM CDT

State of Nebraska, appellee, v.
Tracy N. Parnell, appellant.

___ N.W.2d ___

Filed May 29, 2020.    No. S-19-425.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling.

3. **Postconviction.** Postconviction relief is a very narrow category of relief.

4. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal.

5. **Postconviction: Proof.** In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.

6. ____: ____. In the absence of alleged facts that would render the judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing.

7. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.

8. ____: ____: ____. When a person seeking postconviction relief has different counsel on appeal than at trial, the motion for postconviction

relief is procedurally barred if the person seeking relief (1) knew of the issues assigned in the postconviction motion at the time of the direct appeal, (2) failed to assign those issues on direct appeal, and (3) did not assign as error the failure of appellate counsel on direct appeal to raise the issues assigned in the postconviction motion.

9. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

10. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the two-part test for ineffectiveness established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); if trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.

11. ____: ____. Much like claims of ineffective assistance of trial counsel, a defendant claiming ineffective assistance of appellate counsel must show that but for appellate counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.

Appeal from the District Court for Douglas County: Gary B. Randall, Judge. Affirmed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Funke, J.

Tracy N. Parnell appeals from the denial of postconviction relief without an evidentiary hearing. Parnell asserts that the trial court erred in determining that his claims of ineffective assistance of appellate counsel are procedurally barred. Although we agree that one of Parnell's claims is not procedurally barred, we nonetheless conclude that Parnell is not entitled to relief. We therefore affirm.

## BACKGROUND

### Convictions and Sentences

In *State v. Parnell*,[1] this court affirmed Parnell's jury trial convictions of first degree murder, attempted first degree murder, two counts of use of a deadly weapon to commit a felony, and possession of a weapon by a prohibited person. The district court for Douglas County sentenced Parnell to life imprisonment on the murder conviction, 40 to 50 years' imprisonment for attempted first degree murder, 40 to 50 years' imprisonment for each count of use of a deadly weapon to commit a felony, and 3 to 20 years' imprisonment for possession of a weapon by a prohibited person, to be served consecutively, with credit for time served. The facts which resulted in Parnell's convictions are set forth in our opinion on direct appeal.

On October 30, 2012, at around 8:14 p.m., Eriana Carr and Nakia Johnson were shot in Omaha, Nebraska. Carr was shot twice and died from her injuries. Johnson was shot 11 times and survived. Johnson told investigators that the shots came from "a blue Nissan Altima with a messed up front bumper." Johnson stated that Parnell and three others threatened her at a party at her friend's apartment 2 days before the shooting, because "they felt like [she] had brought someone into the house from another side," or "[a]nother hood."

Detectives discovered that Parnell had been stopped while driving a blue Nissan Altima several months earlier. The

---

[1] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).

registered owner of the car was Jasmine Nero, the mother of Parnell's child. When interviewed by investigators, Parnell denied any knowledge of an Altima and stated that he never drove any of Nero's vehicles.

Parnell spoke to Nero about the Altima in a call from jail. Nero testified that she understood from that call that Parnell wanted her "to get rid of" the car. Nero moved the car to a garage, where investigators later found it. The car's front bumper was damaged, and it contained a box with Parnell's thumbprint on it.

### Pretrial Discovery

Prior to trial, Parnell filed a motion to exclude the State's expert witness William Shute, a special agent with the Federal Bureau of Investigation (FBI) and a member of the FBI's "Cellular Analysis Survey Team" who performs "historical cell site analysis" using call detail records provided by cellular carriers. Shute explained that call records show the tower and the sector that a particular cell phone used. Cell towers usually have three sectors. The towers and sectors can be plotted on a map in order to locate a cell phone at a particular time.

Shute testified regarding the locations of Parnell's cell phone around the time of the shooting. Parnell's call detail records showed that his cell phone connected to tower: (1) 201 at 7:52 p.m., (2) 729 at 8:07 p.m., (3) 201 at 8:11 p.m., (4) 729 at 8:20 p.m., and (5) 201 at 8:20 p.m. Shute plotted the towers and their coverage areas on a map. He testified that the coverage areas for towers 201 and 729 overlap and that the way Parnell's cell phone switched between towers 201 and 729 showed it was definitely located within the overlapping coverage area at the time of the shooting. The court overruled the motion to exclude, finding that Shute was qualified to testify as an expert and that his methods were reliable.

Parnell's counsel later moved to exclude Shute's testimony or continue trial based on the discovery of undisclosed evidence. Counsel filed an affidavit stating that he attended a seminar

with a presentation by cellular analyst Michael O'Kelly. The State had disclosed in discovery that O'Kelly had performed cell phone mapping services on the case for the Omaha Police Department (OPD). In response to a question from Parnell's counsel, O'Kelly stated that he performed more services than disclosed in the report. In supplemental discovery, O'Kelly provided Parnell's counsel with an affidavit detailing his interactions with the State, and the State disclosed a series of emails between O'Kelly, a detective of the OPD, and a deputy county attorney.

In the emails, the detective asked O'Kelly if he had a formal report to present to the county attorney. O'Kelly responded that he could do so in about 10 days. He stated, "Remember, if it's in writing it's Discoverable[.] I would recommend the county attorney and I visiting and then letting them decide." O'Kelly then later wrote to the deputy county attorney, "It was a pleasure visiting Friday[.] I am sending the cell maps and my cell forms, guides and CV[.] When you have a moment after reviewing these, call and I will walk you through each."

In his affidavit, O'Kelly stated that he "reviewed the . . . call detail records and concluded that [Parnell's cell phone] appeared to travel from the west side of Omaha [where Parnell lived] to the east side, then north and south and then traveling back to the general area on the west side." O'Kelly said that he "began processing and mapping the individual cell site registrations. The handset transition west to east, north/south and east to west activities were confirmed." He then provided the OPD detective with "multiple maps depicting handset movements consistent with cell site registrations that supported physical movement from Omaha's west side to the east side and possible travel movements north and south on the east side."

O'Kelly also stated that he informed the detective that "it is impossible to identify a specific location stop(s), specific surface roadway travels based upon the existing cellular data." He stated that "drawing circles and other shapes with defined

boundaries is unreliable and at best simple guessing with an agenda. The 'guessing' may be based upon experience and training but will still have no foundation and/or credible support that is rooted with existing electronic wireless data." And he stated that "in order to possibly place the subject [cell phone] in the immediate area of the crime scene . . . it will be necessary to conduct an RF Signal Field Survey." He explained that his approach to performing such a survey, or drive test, "is time consuming and labor intensive covering days if not weeks."

In his motion to exclude Shute's testimony or continue trial, Parnell argued that the State failed to disclose O'Kelly's opinions that a drive test was necessary and that the FBI's methods were not reliable. In support of his motion, Parnell offered O'Kelly's affidavit, but not the emails. The State responded that O'Kelly's opinion was not exculpatory and that O'Kelly placed Parnell's cell phone in the same area as Shute had, although O'Kelly was not as specific. The court overruled the motion, finding the evidence was not exculpatory and had been provided at an early date. The court permitted Parnell to retain O'Kelly as an expert witness and allowed 12 days to prepare his testimony.

Before trial, Parnell renewed his motion to continue the trial, offering the email exchanges with O'Kelly as support. The court overruled the renewed motion.

## Trial

At trial, Johnson testified and described the shooting, the blue Nissan Altima, and the threatening incident 2 days before the shooting. Nero testified regarding the Altima and her relationship with Parnell. Nero testified that she lied to police for Parnell and was charged as an accessory to a felony. Shute testified that towers 201 and 729 form an overlap area and that Parnell was within the overlap area at the time of the shooting. O'Kelly was present throughout the trial but did not testify. The jury returned a verdict of guilty on all counts.

## MOTION FOR NEW TRIAL

Parnell timely moved for a new trial. He offered a second affidavit from O'Kelly which he contended showed proof of newly discovered evidence which could not have been discovered and produced at trial. O'Kelly averred that after his initial work on Parnell's case, he "informed the government that additional field testing by means of a 'drive test' would be required in order to move from speculation to accuracy in the cell tower connection plotting." A drive test involves making cell phone calls while driving and then obtaining call detail records to see which towers the cell phone used. Shute did not perform such a drive test.

O'Kelly began a drive test on the last day of the trial. He averred that the drive test revealed that the crime scene was between towers 201 and 729, which are 1.84 miles apart. The drive test showed that the coverage areas for towers 201 and 729 do not overlap or border each other, as Shute claimed. O'Kelly stated that Parnell had to have left the crime scene in order to connect to tower 729. However, O'Kelly also said that the data showed that Parnell's cell phone "was in the general vicinity (1 - 2 miles of the crime scene) before, during and after the shooting."

The district court overruled the motion for new trial, finding that O'Kelly's opinions could have been discovered and produced using reasonable diligence. In addition, the court found that Parnell could have disputed Shute's testimony by calling O'Kelly as a witness. The court noted that the State had disclosed early in the discovery process that O'Kelly had worked on the case. Lastly, the court concluded that O'Kelly's opinions were not material, because they would not have affected the outcome of trial. The court found that the drive test results "seem to incriminate [Parnell]."

## DIRECT APPEAL

On direct appeal, Parnell assigned that the district court erred in overruling his motion to exclude Shute's testimony

or continue trial and his motion for a new trial. Parnell also claimed that his trial counsel was ineffective because he did not call O'Kelly to testify as an expert witness at trial.

We found no merit to any of Parnell's assigned errors. We found that under *Brady v. Maryland*,[2] the timing of the State's disclosure of O'Kelly's opinions did not violate Parnell's right to due process because the State disclosed the evidence 1 week before trial. We found that the State had no duty to disclose O'Kelly's oral, unrecorded opinions under Neb. Rev. Stat. § 29-1912 (Reissue 2016), because his comments on the need for more data were akin to an internal, informal document and were not results or reports of examinations or scientific tests under § 29-1912(1)(e). We also found Parnell did not make it clear to the district court that O'Kelly required more than 12 days to perform a drive test. We therefore concluded that the district court did not abuse its discretion in overruling Parnell's motion to exclude Shute's testimony or continue trial.

We rejected Parnell's argument that the court erred in overruling his motion for a new trial, finding that, even assuming O'Kelly's opinions constituted newly discovered evidence, there was not a reasonable probability of a substantially different result. We found that even though O'Kelly criticized the precision of Shute's opinions, O'Kelly's opinions still incriminated Parnell, because O'Kelly placed Parnell's cell phone within 1 to 2 miles of the crime scene before, during, and after the shooting. In addition, the incriminating testimony of Johnson and Nero substantially diminished the importance of the evidence regarding the location of Parnell's cell phone.

In addressing Parnell's argument that his trial attorneys were ineffective for failing to call O'Kelly to testify, we first addressed whether Parnell was represented by the same counsel at trial as on appeal and concluded that he was not. We

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

found that the two attorneys who represented Parnell at trial intended to withdraw in the trial court, but because there was no order memorializing their withdrawal, they were certified as appellate counsel to this court, and that they did not then file a motion to withdraw in this court. In response to our show cause order, Parnell's trial counsel submitted affidavits stating that they had no contact with him after sentencing and did not participate in his appeal. As such, we concluded that we were able to address Parnell's ineffectiveness claim on direct appeal. We found that had O'Kelly testified, the outcome would not have been different, because he opined that Parnell's cell phone was near the crime scene when the shooting occurred. We determined that the record conclusively refuted Parnell's claim that he was prejudiced by the actions of his trial counsel.

## Postconviction

As a self-represented litigant, Parnell filed a motion for postconviction relief which asserted claims of trial court error, prosecutorial misconduct, and ineffective assistance of trial and appellate counsel. Most of the allegations in Parnell's motion concern issues previously raised and addressed on direct appeal, especially with regard to O'Kelly's opinions and the drive test. Of particular note in this appeal, Parnell alleged that his trial counsel and appellate counsel failed to "submit" the email exchanges with O'Kelly to show that O'Kelly's data is more reliable than Shute's data. Parnell further alleged that the State committed prosecutorial misconduct by "allowing the testimony of Shute at trial knowing that his testimony as an expert was not accurate." He alleged that, contrary to Shute's testimony that cell towers 201 and 729 form an overlap area, O'Kelly opined that the cell tower areas do not overlap and that the performance of a drive test was required in order to obtain more accurate data. The district court dismissed the motion without an evidentiary hearing, concluding that all of Parnell's claims are procedurally barred because they were known or

knowable at the time of his direct appeal. Parnell filed a notice of appeal. Parnell's counsel entered his appearance and filed a brief on his behalf.

## ASSIGNMENTS OF ERROR

Parnell assigns, restated, that the district court erred in determining that his claims for postconviction relief are procedurally barred; in particular, his claim in which he alleges that appellate counsel was ineffective by failing to raise trial counsel's failure to "introduce certain evidence and correct prosecutorial misconduct." In the alternative, Parnell assigns that the court erred in determining that any of his claims are procedurally barred because it was unclear as to whether he was represented by the same lawyers during trial and direct appeal.

## STANDARD OF REVIEW

[1,2] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[3] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling.[4]

## ANALYSIS

Parnell argues that the district court erred in determining that all of his claims are procedurally barred, because his motion raises ineffective assistance of appellate counsel claims and postconviction is his first opportunity to raise such claims. The State does not contest this point, but argues that based on the ineffective assistance of appellate counsel allegations raised in the motion, Parnell is entitled to no relief.

---

[3] *State v. Hessler, ante* p. 451, 940 N.W.2d 836 (2020).

[4] *State v. Mata*, 304 Neb. 326, 934 N.W.2d 475 (2019).

[3,4] Under the Nebraska Postconviction Act,[5] a prisoner in custody may file a motion for relief on the ground that there was a denial or infringement of the prisoner's constitutional rights that would render the judgment void or voidable. Postconviction relief is a very narrow category of relief.[6] A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal.[7]

[5,6] In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.[8] In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution.[9] In the absence of alleged facts that would render the judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing.[10]

## Claims Procedurally Barred

Parnell contends that his claims of prosecutorial misconduct were not procedurally barred. However, we agree with the State that this portion of Parnell's motion asserts in a conclusory fashion, without factual support, that he was denied ineffective assistance of appellate counsel. An evidentiary hearing is not required when a motion for postconviction

---

[5] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016).

[6] *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019).

[7] *Mata, supra* note 4.

[8] *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

[9] *Id*.

[10] *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

relief alleges only conclusions of fact or law without supporting facts.[11]

Upon review of the allegations supporting Parnell's prosecutorial misconduct claims, it is clear that he did not allege that his appellate counsel was ineffective for failing to raise on direct appeal that his trial counsel was ineffective for failing to raise the alleged prosecutorial misconduct with respect to Shute's testimony. Additionally, he did not allege how inclusion of the issue would have changed the outcome of his direct appeal. Because Parnell's prosecutorial misconduct claims do not include factual allegations concerning the effectiveness of appellate counsel, we do not view these claims as ineffective assistance of appellate counsel claims, and as a result, the district court did not err when it determined these claims were procedurally barred.

CLAIM NOT PROCEDURALLY BARRED

While we agree with the district court's observation that Parnell's motion mainly discusses claims that either were raised or could have been raised on direct appeal, upon de novo review of Parnell's postconviction motion, and in consideration of the errors assigned by Parnell in this appeal, we find that Parnell has raised one ineffective assistance of appellate counsel claim which is not procedurally barred and must be analyzed under *Strickland v. Washington*.[12]

[7] In the instant case, Parnell was represented by different counsel on direct appeal than at trial. Ordinarily, when a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.[13]

---

[11] *Id.*

[12] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[13] *Parnell, supra* note 1.

Otherwise, the issue will be procedurally barred.[14] A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.[15]

Parnell's counsel on direct appeal argued that trial counsel was ineffective for failing to call O'Kelly as a witness. For reasons previously discussed herein, we rejected Parnell's argument, because O'Kelly's testimony tended to incriminate Parnell and had O'Kelly testified, the outcome of trial would have been the same. In his motion for postconviction relief, Parnell asserts that his appellate counsel was ineffective for failing to raise trial counsel's failure to "submit the e-mails by [the OPD detective, the deputy county attorney,] and O'Kelly, concerning their meeting about O'Kelly's data being more reliable than Shute's data."

[8] When a person seeking postconviction relief has different counsel on appeal than at trial, the motion for postconviction relief is procedurally barred if the person seeking relief (1) knew of the issues assigned in the postconviction motion at the time of the direct appeal, (2) failed to assign those issues on direct appeal, and (3) did not assign as error the failure of appellate counsel on direct appeal to raise the issues assigned in the postconviction motion.[16] Here, the record reflects that at the time of his direct appeal, Parnell was aware of the factual basis for his claim that trial counsel was ineffective for failing to "submit the e-mails." While trial counsel did offer the emails in support of Parnell's renewed motion to exclude Shute's testimony or continue trial, the emails were not offered into evidence during trial for the jury's consideration. Parnell's appellate counsel did not assert this issue on direct appeal. Because Parnell alleged in his motion for postconviction relief that appellate counsel was ineffective in not doing so, the issue

---

[14] *Id.*

[15] *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017).

[16] *State v. Bishop*, 263 Neb. 266, 639 N.W.2d 409 (2002).

was presented at Parnell's first opportunity and is not procedurally barred.[17]

Because we conclude that Parnell has raised an ineffective assistance of appellate counsel claim that is not procedurally barred, we do not reach Parnell's alternative assignment of error that the court erred in determining that any of his claims are procedurally barred because it was unclear as to whether he was represented by the same lawyers during trial and direct appeal.

An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[18] Moreover, it is clear from the discussion on this issue in our opinion on direct appeal that Parnell's counsel on appeal was different than his counsel at trial.

### Appellate Counsel Not Ineffective

Although we find that Parnell's motion raises a discrete issue that is not procedurally barred, given that we concluded on direct appeal that Parnell was not prejudiced by counsel's failure to call O'Kelly as a witness, we similarly conclude that Parnell failed to show that he was prejudiced by counsel's failure to submit the emails by the OPD detective, the deputy county attorney, and O'Kelly into evidence at trial.

[9] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.[19] To prevail on a claim of ineffective assistance of counsel under *Strickland*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[20] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but

---

[17] See *id*.

[18] *State v. Goynes*, 303 Neb. 129, 927 N.W.2d 346 (2019).

[19] *Vela, supra* note 15.

[20] *Id*.

for his or her counsel's deficient performance, the result of the proceeding would have been different.[21] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[22]

[10,11] When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test.[23] If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.[24] Much like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.[25] In determining whether trial counsel's performance was deficient, courts give counsel's acts a strong presumption of reasonableness.[26]

In analyzing Parnell's claim, we focus on the allegations in his postconviction motion.[27] Here, on the issue of prejudice, Parnell alleged that had his trial counsel submitted the emails into evidence, "[t]his would have proved that the State knew that there existed exculpatorial [sic] material evidence that [Parnell] was possibly in another area of town when the

---

[21] *Id*.

[22] *Id*.

[23] *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018), *disapproved on other grounds, Allen, supra* note 10.

[24] *Id*.

[25] *Id*.

[26] *Id*.

[27] See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, Allen, supra* note 10 (appellate court will not consider factual allegations made for first time on appeal).

murder was committed." Based on the record, we find no support for Parnell's claim that counsel's introduction of the emails would have created a probability sufficient to undermine confidence in the outcome at trial. This is because, as stressed by this court in its opinion on direct appeal, the testimony of Johnson and Nero provided powerful and compelling evidence of Parnell's guilt, which significantly reduced the importance of the expert testimony concerning the location of Parnell's cell phone.[28]

Johnson testified that Parnell had threatened her 2 days before the shooting and that the shooter was driving a blue Nissan Altima with a damaged bumper. Nero testified that Parnell drove her Altima on the night of the shooting, and she admitted to lying to police about the Altima in order to help Parnell. When police found the Altima, the car's front bumper was damaged and an item inside the car contained Parnell's thumbprint. Because these witnesses directly incriminated Parnell in several respects, even if the emails were introduced into evidence and effectively used to rebut aspects of Shute's testimony, the likelihood of acquittal is low.

This conclusion is reinforced when the actual content of the emails are considered. Had the jury been presented with the emails, it would have merely learned that O'Kelly met with the prosecution to discuss his report and findings and that the prosecution ultimately had Shute testify as an expert rather than O'Kelly. While Parnell's claim about the emails does not refer to calling O'Kelly as a witness, his motion does state that the emails concern the prosecution's "meeting about O'Kelly's data being more reliable than Shute's data." Parnell's claim of ineffectiveness therefore includes a comparison between the findings of the two experts. In evaluating this claim, we assume for the sake of argument only that Parnell's trial counsel would have introduced the emails through O'Kelly as a witness and that the jury would then have learned O'Kelly's opinions. We

[28] See *Parnell, supra* note 1.

explained on direct appeal that, although he was not as precise as Shute, O'Kelly's testimony incriminated Parnell, because O'Kelly placed Parnell in the general vicinity of the crime scene at the time of the shooting. We must therefore conclude that trial counsel was not ineffective, because it is clear that trial counsel's strategic decision not to call O'Kelly as a witness and introduce the emails through him benefited Parnell, because O'Kelly would have incriminated Parnell. Because Parnell's trial counsel was not ineffective, Parnell's appellate counsel was not ineffective in failing to raise this issue, and Parnell suffered no prejudice as a result of the actions of appellate counsel. Postconviction relief without an evidentiary hearing is properly denied when the files and records affirmatively show that the prisoner is entitled to no relief.[29]

## CONCLUSION

For the foregoing reasons, although our reasoning differs from that of the district court, we affirm the order of the district court denying Parnell's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.

FREUDENBERG, J., not participating.

---

[29] *State v. Fox*, 286 Neb. 956, 840 N.W.2d 479 (2013).