IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LODING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BASHIR V. LODING, APPELLANT.

Filed December 1, 2020.    No. A-19-1023.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge.
Affirmed.

James J. Regan for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Bashir V. Loding appeals from the Douglas County District Court's denial of his verified motion for postconviction relief following an evidentiary hearing. For the reasons set forth herein, we affirm.

BACKGROUND

Loding was charged with first degree sexual assault of a child. The information alleged that on or about May 1 through September 17, 2015, Loding, a man at least 19 years old or older, subjected A.B., a child less than 12 years old, to sexual penetration.

A jury found Loding guilty, and he was sentenced to 35 to 50 years' imprisonment. In his direct appeal, he challenged the sufficiency of the evidence to support his conviction, claimed that his sentence was excessive, and asserted several claims of ineffective assistance of trial counsel.

As relevant to the issues raised in this appeal, the Nebraska Supreme Court found that the record on direct appeal was insufficient to address whether Loding's trial counsel was ineffective in informing the jury during opening statements that A.B.'s mother would be called to testify at trial, but then failing to call her as a witness. See *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). The Supreme Court otherwise affirmed Loding's conviction and sentence. See *id*.

In July 2017, Loding filed a pro se motion for postconviction relief. Thereafter, the district court appointed counsel to represent him, and counsel was permitted to file a supplemental motion for postconviction relief. Relevant to this appeal, the motions alleged that trial counsel was ineffective in failing to properly explain the issues regarding Loding testifying at trial such that any decision by Loding to not testify was not done knowingly and voluntarily, and failing to depose or obtain sworn or other statement of A.B.'s mother in anticipation of trial which would have revealed the nature of her testimony prior to telling the jury that she would appear and provide exculpatory testimony. The district court granted an evidentiary hearing on these claims.

Loding was represented at trial by James Schaefer, who was assisted by his son. As the Supreme Court addressed in Loding's direct appeal, the parties were of the belief that Schaefer's son remained a senior certified law student at the time of trial, but they later realized he did not meet the qualifications. See *State v. Loding, supra*. However, the Supreme Court concluded that there was no per se ineffective assistance of counsel in the son's participation at trial because Schaefer, a qualified and licensed attorney in Nebraska, was the lead attorney for Loding's trial and was present at all times throughout trial and for all interactions between his son and Loding. See *id*.

A.B. disclosed the sexual abuse by Loding in September 2015. The same day, A.B.'s mother was interviewed at a child advocacy center, and a recording of the interview was received into evidence at the evidentiary hearing. In the interview, A.B.'s mother provided Loding's identity to investigators, and it is clear from the video that she was extremely upset and outraged at Loding for harming A.B. At the end of the interview, A.B.'s mother was arrested and ultimately charged with felony child abuse related to the allegations A.B. made against Loding.

A.B.'s mother was represented on those charges by an attorney. The attorney testified at the evidentiary hearing that he watched the recorded interview with A.B.'s mother during his representation of her. He explained that prior to Loding's trial, he spoke with Schaefer and Schaefer's son about A.B.'s mother's willingness to testify at Loding's trial. He testified that after discussing the matter with A.B.'s mother, she directed him to inform the Schaefers that she would testify in favor of Loding, because she did not think anything happened. So, at his client's direction, the attorney told the Schaefers that A.B.'s mother would testify that no sexual assault had occurred or that Loding did not have the opportunity to commit the sexual assault. He clarified that A.B.'s mother "very specifically directed [him] to . . . tell the Schaefers that she did not think that any sexual assault had occurred, and she would be happy to testify upon [Loding's] behalf."

According to the attorney, Schaefer requested on more than one occasion to be allowed to speak directly with A.B.'s mother, but as her attorney, he was not comfortable with the request, and after speaking with A.B.'s mother and offering his advice, she decided she did not want to have such a meeting, so he denied Schaefer's request. The last time he talked with Schaefer before

Loding's trial began, he again indicated to Schaefer that A.B.'s mother was willing to testify in a manner that would be seen as beneficial to Loding.

The depositions of Schaefer and his son were received into evidence at the evidentiary hearing. They both explained that Loding was at Schaefer's office very frequently during their representation of him; Schaefer estimated that Loding was there 50 to 100 times prior to trial. Schaefer and his son each watched the recorded interview of A.B.'s mother and watched it with Loding.

Schaefer testified that he spoke with A.B.'s mother's attorney three to five times prior to trial and that he was always reassured that A.B.'s mother was going to testify consistently with not believing the allegations A.B. made and feeling angry at A.B. In other words, the attorney told Schaefer that A.B.'s mother would testify in a manner that was favorable to Loding. Schaefer's son reiterated this testimony, stating that Schaefer told him that he had talked to the attorney several times and that he said that A.B.'s mother would testify on Loding's behalf because she did not believe the allegations.

Schaefer explained that his overall trial strategy was that A.B. did not appreciate Loding dating her mother and she was making up the allegations to get Loding "out of the picture." So calling A.B.'s mother as a witness fit into his trial strategy. Schaefer's initial decision to call A.B.'s mother as a witness was partially based on his discussions with her attorney and partially based on his discussions with Loding, who Schaefer said personally and continually assured him that A.B.'s mother would "back him up on this." According to Schaefer, Loding repeatedly told him that he was certain that A.B.'s mother was going to say that A.B. was making up the allegations. Schaefer's son also testified that Loding had indicated to him that A.B.'s mother "knows nothing happened." Schaefer explained that at all times, Loding was aware of the decision to call A.B.'s mother as a witness at trial and that it was "part of his wish to have her called" as a witness. Schaefer issued a subpoena for A.B.'s mother to testify at trial.

During opening statements at trial, Schaefer's son informed the jury that A.B.'s mother was going to testify on Loding's behalf that he did not have the opportunity to sexually assault A.B. During trial, the judge was made aware that there were criminal charges pending against A.B.'s mother, so he wanted to have a hearing outside the presence of the jury and with her attorney present, concerning her rights regarding testifying and incriminating herself. Once A.B.'s mother was brought into the courtroom, however, she became irate, yelling that she wanted Loding to go to jail for the rest of his life and calling him names. The sheriffs had to physically restrain her and take her out of the courtroom. Her outburst in court was the first time that her attorney realized that she would not be testifying on behalf of Loding. He did not know her exact reasoning for the outburst and did not expect it.

After the outburst, Schaefer discussed A.B.'s mother with Loding, and they decided not to call her as a witness. On the record at trial, Schaefer explained to the court that after discussing the matter with Loding, they felt that it was in his best interest not to call A.B.'s mother to testify. Loding then, personally, told the court on the record that he did not want A.B.'s mother to testify. Loding did not call any witnesses on his behalf at trial. By the time of closing arguments, Schaefer's trial strategy had changed to arguing that Loding was presumed innocent, the State had the burden of proving him guilty, and it failed to prove his guilt beyond a reasonable doubt; thus,

he did not need to call any witnesses or present any evidence. In closing argument, Schaefer's son explained to the jury that although they initially said they would call A.B.'s mother to testify, they did so believing that the State would prove its case, but he argued that the State did not meet that burden.

A deposition of Loding was also received into evidence at the evidentiary hearing. Therein, Loding claimed that prior to trial, neither Schaefer nor his son ever told him that A.B.'s mother was willing to testify favorably to him at trial. He denied getting any information from A.B.'s mother that she would testify for him. He additionally claimed that after A.B.'s mother's courtroom outburst, Schaefer and his son did not talk to him about not calling her as a witness.

After the conclusion of the evidentiary hearing, the district court entered a written order. It concluded that Loding and his trial counsel made a tactical decision to subpoena A.B.'s mother to testify after being assured on more than one occasion that she would testify favorably for Loding, despite what she had initially told investigators in her recorded interview. The court observed that her attorney prevented Schaefer from interviewing her or taking her deposition prior to trial and that it was not until the morning of her anticipated testimony that Schaefer was allowed to ask her about her testimony. The district court determined that Schaefer made a tactical decision to tell the jury about the anticipated testimony of A.B.'s mother and then explained her absence to the jury in its closing. The court ultimately found that Loding failed to show that Schaefer's performance was deficient and failed to prove how the outcome of trial would have been different had Schaefer not mentioned A.B.'s mother as a possible witness in opening statements. The court therefore denied the motion for postconviction relief. Loding appeals.

## ASSIGNMENTS OF ERROR

Loding assigns, consolidated, restated, and renumbered, that the district court erred in denying his motion for postconviction relief because trial counsel was ineffective in (1) his handling of the anticipated testimony of Loding and (2) his handling of the anticipated testimony of A.B.'s mother.

## STANDARD OF REVIEW

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion. *Id*.

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *Id*.

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's factual findings unless they are clearly erroneous. *Id*. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. McGuire, supra*.

ANALYSIS

To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *State v. Glass*, 298 Neb. 598, 905 N.W.2d 265 (2018). A court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Collins, supra*.

The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). When reviewing claims of ineffective assistance, an appellate court will not second-guess a trial counsel's reasonable strategic decisions. *Id*. And an appellate court must assess the trial counsel's performance from the counsel's perspective when the counsel provided the assistance. *Id.*

Loding assigns that the district court "erred in determining that trial counsel had met the minimum obligation of advising [him] of his right to testify or not such that any agreement of [Loding] regarding the choice not to testify was not done knowingly and voluntarily." Brief for appellant at 3. In his supplemental motion for postconviction relief, Loding asserted that trial counsel was ineffective when he "failed to properly explain the issues regarding [Loding] testifying at trial such that any decision by [Loding] to not testify was not done knowingly and voluntarily." Any issues related to Loding testifying at trial are procedurally barred, however, because he failed to raise them on direct appeal.

Loding was represented by different counsel on direct appeal than at trial. Ordinarily, when a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). Otherwise, the issue will be procedurally barred. *Id*. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *Id*.

When a person seeking postconviction relief has different counsel on appeal than at trial, the motion for postconviction relief is procedurally barred if the person seeking relief (1) knew of the issues assigned in the postconviction motion at the time of the direct appeal, (2) failed to assign those issues on direct appeal, and (3) did not assign as error the failure of appellate counsel on direct appeal to raise the issues assigned in the postconviction motion. *Id*.

In the present case, at the time of direct appeal, Loding was aware of any issues related to comments made during opening statements at trial and surrounding his discussions with trial counsel regarding whether to testify at trial. He was therefore required to raise these issues on

direct appeal, and he does not assign as error appellate counsel's failure to raise these issues on direct appeal. Furthermore, the supplemental motion for postconviction relief did not allege that trial counsel was ineffective in informing the jury that Loding would testify and then failing to call him as a witness; rather, the only claim raised and addressed by the district court that related to Loding's potential testimony claimed that trial counsel failed to properly advise him on his right to testify.

Loding attempts to avoid the procedural bar by claiming that the fact that he did raise, on direct appeal, claims of ineffective assistance of counsel regarding comments made during opening statements is sufficient to have preserved his argument regarding his own testimony. Although he did raise several issues regarding comments trial counsel made during opening statement and closing argument, it is clear that he did not raise any issue regarding his own testimony. As the Supreme Court outlined in *State v. Loding*, 296 Neb. 670, 681-82, 895 N.W.2d 669, 680 (2017):

> Loding alleges that he received ineffective assistance of counsel during opening statement and closing argument. He claims that counsel was ineffective in failing (1) to call on A.B.'s mother to testify or explain her absence after stating during opening statement she would be called upon, (2) to mention during closing argument other individuals who had sexually assaulted A.B., and (3) to give a longer closing argument or say more than that Loding was not guilty.

These three claims are insufficient to have preserved any issues relating to informing the jury that Loding would testify or trial counsel's discussions with Loding about his decision whether to testify. As a result, we do not address any claims related to Loding testifying at trial.

Loding also argues that he was entitled to postconviction relief because his trial counsel performed deficiently in his handling of the anticipated testimony of A.B.'s mother. He claims that trial counsel was ineffective in telling the jury during opening statements that A.B.'s mother would testify in favor of Loding without having sufficiently investigated the substance of her testimony. We disagree.

According to Schaefer, his overall trial strategy was that A.B. made up the allegations against Loding to get Loding "out of the picture." So calling A.B.'s mother as a witness fit into that trial strategy. Schaefer watched the recorded interview with A.B.'s mother, but spoke with her attorney three to five times prior to trial, and was always reassured that A.B.'s mother was going to testify consistently with not believing A.B. and feeling angry at her. In other words, the attorney told Schaefer that A.B.'s mother would testify in a manner that was favorable to Loding. In addition, Loding, personally, repeatedly assured Schaefer that A.B.'s mother would "back him up on this" and testify that A.B. was making up the allegations.

Likewise, Schaefer's son testified that he watched the recorded interview of A.B.'s mother at the Schaefers' office with Loding, and Loding indicated to him that A.B.'s mother knew that "nothing happened." According to Schaefer's son, Schaefer told him that he had spoken with A.B.'s mother's attorney, who reported that she would testify on Loding's behalf because she did not believe the allegations were true.

Mirroring this testimony, A.B.'s mother's attorney explained that his client directed him to inform the Schaefers that she would testify in a manner that would be beneficial to Loding because

she did not think anything happened. So, at the direction of A.B.'s mother, her counsel told the Schaefers that she would testify and assert that no sexual assault had occurred or that Loding did not have the opportunity to commit the sexual assault. He said that A.B.'s mother "very specifically directed [him] to . . . tell the Schaefers that she did not think that any sexual assault had occurred, and she would be happy to testify upon [Loding's] behalf."

Schaefer requested on more than one occasion to be allowed to speak directly with A.B.'s mother, but her attorney decided that he was not comfortable allowing that conversation to occur, and after he conferred with A.B.'s mother, she decided she did not want to have such a meeting, so they denied Schaefer's request.

The last time A.B.'s mother's attorney talked with Schaefer before opening statements at trial, he reiterated that she was willing to testify in a manner that would be seen as consistent with helping Loding. A.B.'s mother's outburst in court was the first time that her attorney realized that she would not be testifying on behalf of Loding. He did not know her exact reasoning for the outburst, and he did not expect it.

Loding argues that Schaefer's conversations with A.B.'s mother's attorney were insufficient investigation into the potential testimony of A.B.'s mother and that he should have also attempted to depose her or "demand" to be allowed to interview her. Brief for appellant at 14. A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland v. Washington, supra*.

Under the circumstances present here, we conclude that the district court did not err in finding that Schaefer's decision not to further investigate the potential testimony of A.B.'s mother was reasonable. We understand that the statements and actions of A.B.'s mother shown in the recorded interview are at odds with the notion of her testifying in favor of Loding at trial. However, Schaefer spoke with her attorney on multiple occasions prior to trial and was repeatedly reassured that A.B.'s mother was willing to testify and would do so in a manner that was favorable to Loding. Schaefer sought to speak with A.B.'s mother personally, but her attorney explained that he was not comfortable allowing Schaefer to do so because of the charges she was facing related to A.B.'s allegations against Loding. The district court determined that Schaefer made a tactical decision to subpoena A.B.'s mother as a witness at Loding's trial and tell the jury about A.B.'s mother's anticipated testimony in opening statement after being assured on more than one occasion that A.B.'s mother would testify in favor of Loding, despite what she had said in her initial recorded interview. And we apply a heavy measure of deference to Schaefer's judgment. See *Strickland v. Washington, supra*.

In addition, Loding, himself, repeatedly assured Schaefer that A.B.'s mother would testify favorably to him at trial. Although Loding denied making these assertions to Schaefer, the district court found Schaefer's testimony in this regard to be credible, and this factual finding is not clearly erroneous. See *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018) (trial court's factual findings upheld unless they are clearly erroneous).

When the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. *Strickland v. Washington, supra*. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. Both Schaefer and his son explained how frequently Loding was in their office prior to trial, and they both testified that Loding assured them that A.B.'s mother would testify favorably to him at trial. Given Schaefer's multiple conversations with A.B.'s mother's attorney and Loding prior to trial, it was not unreasonable for him to decline to further investigate whether A.B.'s mother would, in fact, testify favorably to Loding at trial. Therefore, the district court did not err in denying postconviction relief.

CONCLUSION

We find no error in the district court's conclusion that Loding failed to establish his claims of ineffective assistance of counsel. The district court's order denying postconviction relief is therefore affirmed.

AFFIRMED.