IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. HICKMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID L. HICKMAN, JR., APPELLANT.

Filed March 18, 2025.    No. A-24-270.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

David Hickman Jr., pro se.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

MOORE, PIRTLE, and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

David L. Hickman, Jr. appeals from the order of the district court for Lancaster County, which denied his motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

In October 2021, a complaint was filed in Lancaster County Court charging Hickman with assault in the first degree in violation of Neb. Rev. Stat. § 28-308 (Reissue 2016), a Class II felony; use of a firearm to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016), a Class IC felony; and possession of a firearm by a prohibited person in violation of Neb. Rev. Stat. § 28-1206(1)(3)(b) (Cum. Supp. 2022), a Class ID felony. The case was subsequently bound

- 1 -

over to district court and an information charging Hickman with the same counts was filed in January 2022.

Hickman pled not guilty to all charges in the information. Hickman filed a pretrial notice of alibi defense, and a jury trial was held in August 2022. Below we have summarized the trial evidence relevant to Hickman's motion for postconviction relief.

At trial, Michael Nunn testified that Hickman is his cousin and that in the early hours of October 7, 2021, Hickman shot him in his right leg, left thigh, and left foot. That night, Nunn was with his girlfriend, Rebecca, and they were on their way to pick up Rebecca's children from her sister's home. Rebecca's sister, Jessica, was also Hickman's girlfriend.

When the couple arrived at Jessica's home, Jessica and Hickman were standing outside. When the women went into the home to retrieve Rebecca's children, Nunn exited his car and was alone with Hickman in the driveway. Nunn then suddenly collapsed to the ground and saw Hickman standing over him with a gun pointed at him. Nunn knew that he had been shot and could not feel his right leg.

A neighbor of Jessica's testified that a little after midnight on October 7, she awoke to loud music booming out of a car stereo. For a time, the stereo quieted and the neighbor could hear voices, but could not determine what they were saying. The music then grew louder, and the neighbor heard three gunshots in quick succession. She called 911 at 12:14 a.m.

Nunn drove himself to the hospital immediately after he was shot. During his drive, he called his brother to inform him that "DJ, he just shot me." Nunn's brother testified consistently with Nunn, confirming that he received a phone call from Nunn between midnight and 12:15 a.m. on October 7, in which Nunn told his brother that he was driving himself to the hospital because "DJ just shot me." Nunn's brother stated that he knew of only one DJ, who is his cousin, David Junior. An investigator with the Lincoln Police Department testified that when she arrived at the hospital at 12:30 a.m., Nunn was already being treated by a medical team.

Hickman testified that he was not present at Jessica's home when Nunn was shot, as he had been dropped off at his daughter's home around 11 p.m. or midnight on October 6 and stayed for 4 hours before Jessica retrieved him. Hickman's daughter testified that Hickman came to her home sometime after midnight on October 7. She was aware of the time because she checked her phone before getting out of bed to answer the door and recalled seeing a "12" on the screen. Hickman's daughter estimated that he stayed at her home for about 30 minutes.

At the close of Hickman's evidence, his trial counsel requested an alibi jury instruction. The trial court denied the instruction given Hickman's burden of proof for an alibi defense and the evidence that had been presented at trial.

After an hour and 14 minutes of deliberation, the jury found Hickman guilty on all counts. Hickman was later sentenced to consecutive prison terms of 8 to 16 years for first degree assault, 14 to 20 years for use of a firearm to commit a felony, and 12 to 22 years for possession of a firearm by a prohibited person.

On direct appeal, and represented by different counsel, Hickman alleged that there was insufficient evidence to support his convictions; his trial counsel was ineffective for (a) failing to file motions in limine to prevent the introduction of statements made by witnesses to law enforcement, (b) failing to object to statements made by witnesses to law enforcement, and (c) failing to request a continuance to secure the attendance of witnesses necessary to his defense; and

that the trial court imposed an excessive sentence on all three counts. Hickman attempted to make a claim that his trial counsel was ineffective for not arguing that his statements to law enforcement should have been suppressed, but this court found that he failed to properly assign this deficiency as error and did not address it.

On appeal, we affirmed Hickman's convictions and sentences. See *State v. Hickman*, No. A-22-677, 2023 WL 3311633 (Neb. App. May 9, 2023) (selected for posting to court website). Hickman's petition for further review was denied by the Nebraska Supreme Court. The mandate was issued on August 21, 2023.

On December 8, 2023, Hickman, now self-represented, filed a motion for postconviction relief. Hickman first alleged that his trial counsel was ineffective for (a) failing to impeach Nunn with inconsistent statements, (b) failing to file motions in limine to prevent the introduction of statements from several witnesses, (c) failing to object to hearsay statements made by Nunn, (d) failing to argue an alibi defense, (e) failing to produce affidavits of Jessica and Rebecca stating they lied to police, (f) failing to depose Nunn, (g) failing to argue there was no proof beyond a reasonable doubt, (h) failing to object to the voluntariness of his confession to police, (i) failing to investigate Nunn's criminal history, (j) failing to file for dismissal due to the non-cooperation of witnesses during a preliminary hearing, (k) forging Hickman's signature on a written arraignment and waiver of physical appearance, and (l) failing to make a *Batson* challenge during voir dire.

Second, Hickman alleged prosecutorial misconduct for (a) making false statements during opening and closing, (b) failing to call Investigator Cronin as a witness at trial, and (c) withholding discovery material.

Third, Hickman alleged that the trial court abused its discretion by (a) failing to allow Hickman to use an alibi defense, (b) failing to recognize a speedy trial violation, and (c) failing to include a lesser included offense in the jury instructions.

Fourth, Hickman alleged that his appellate counsel was ineffective for failing to assign all the errors listed above regarding the ineffectiveness of his trial counsel, the prosecutorial misconduct, and the trial court's abuse of discretion.

Finally, Hickman alleged that there was newly discovered evidence in his case which proved his innocence and that his appellate counsel failed to raise and argue the newly discovered evidence on direct appeal.

On March 14, 2024, the district court entered an order denying Hickman's motion for postconviction relief. We have set forth details of the court's reasoning in the analysis section below.

Hickman appeals.

## ASSIGNMENT OF ERROR

Hickman assigns, restated and consolidated, that the district court erred in rejecting all the claims raised in his motion for postconviction relief and thus denying his motion for postconviction relief without an evidentiary hearing.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his

- 3 -

or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

ANALYSIS

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes, supra*.

*Procedurally Barred Claims.*

In its order denying Hickman's postconviction motion without an evidentiary hearing, the district court found that Hickman's claims of ineffective assistance of trial counsel, prosecutorial misconduct, and judicial abuse of discretion were procedurally barred. We agree.

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *Id*. Hickman was represented by different counsel on appeal than at trial. Ordinarily, when a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. See *id*. Otherwise, the issue will be procedurally barred. *Id*.

The district court found that all of Hickman's claims of ineffective assistance of trial counsel raised in his postconviction motion were known at the time of Hickman's direct appeal. Hickman's claims include his trial counsel's alleged failure to impeach witnesses, to object to hearsay statements, to make proper argument, to produce affidavits, to file for depositions, forging a document waiving his physical appearance at arraignment, and failure to file a *Batson* challenge. As the district court observed, all these claims were either the result of conduct in open court during Hickman's trial or "could have [been] discovered before his direct appeal through the exercise of due diligence." Hickman had different counsel on direct appeal and thus was required to raise all claims of ineffective assistance of trial counsel at that time.

Likewise, Hickman's claims of prosecutorial misconduct and judicial abuse of discretion are procedurally barred. In his motion for postconviction relief, Hickman alleged that the prosecution made false statements during opening and closing at his trial and failed to make proper discovery disclosures. Hickman also alleged that the trial court abused its discretion by failing to allow him to use an alibi defense, failing to recognize a speedy trial violation, and allowing improper jury instructions. The district court found that most of these allegations occurred during open court and noted that Hickman did not allege any of these claims were not discoverable with the exercise of due diligence. Because these claims could have been brought on direct appeal, Hickman was procedurally barred from bringing them in his motion for postconviction relief.

- 4 -

*Ineffective Assistance of Appellate Counsel.*

Hickman also raised several claims of ineffective assistance of appellate counsel in his motion for postconviction relief.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Goynes, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington, supra*. If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024).

On appeal, Hickman argues only that his appellate counsel was ineffective in failing to allege trial counsel's ineffectiveness regarding his alibi defense. Because Hickman has presented a layered ineffective assistance of counsel claim, we proceed to address the merits of his argument. This allegation of ineffective assistance of appellate counsel is the sole claim properly before us. See *State v. Yah*, 317 Neb. 730, 11 N.W.3d 632 (2024) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Hickman asserts that the district court's denial of his motion for postconviction relief without an evidentiary hearing was in error, because his trial counsel was ineffective for failing to present evidence regarding his alibi and for failing to file notice of an alibi defense. We note that contrary to Hickman's assertion, his trial counsel did file notice of an alibi defense, he presented evidence regarding Hickman's alleged alibi, and he requested the jury instruction on an alibi defense. While Hickman acknowledges that his trial counsel called Hickman's daughter to testify that Hickman was at her home at the time of the shooting, Hickman contends that trial counsel should have investigated and called Investigator Cronin and Jessica to testify. According to Hickman, Cronin had examined Jessica's phone and saw a text message sent from Jessica to Hickman at 11:54 p.m. stating "they are raiding my house." Brief for appellant at 20. Hickman argues that he told his trial counsel to investigate and call Investigator Cronin and Jessica as witnesses to establish Hickman's alibi at trial. He argues that trial counsel was ineffective in failing to do so and that his appellate counsel was ineffective in failing to assign this claim of ineffective assistance as error on direct appeal.

To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time

that it was impossible to have been at the place where and when the crime was committed. *State v. Betancourt-Garcia, supra.*

In its order denying Hickman's postconviction motion without an evidentiary hearing, the district court found that Hickman's allegation related to his alibi defense was refuted by the record. The court noted that trial counsel had argued an alibi defense by presenting Hickman's daughter's testimony that Hickman was at her home sometime after midnight on the night of the shooting and that counsel requested an alibi jury instruction.

We agree with the district court that Hickman is unable to show deficient performance by trial counsel on this claim. It is clear from the record that trial counsel attempted to demonstrate that Hickman was at his daughter's home at the time of the shooting. Hickman's daughter testified that though she was "certain" Hickman had come to her house the night of the shooting, she was unable to recall the exact time he arrived and stated that it could have been 12:00, 12:15, 12:30, or 12:45 in the morning. Hickman himself testified that he was dropped off at his daughter's house between 11 p.m. and 12:00 a.m. and stayed for several hours. That the jury rejected trial counsel's argument regarding Hickman's alibi does not mean that trial counsel was deficient in his presentation of the evidence.

Regarding the alleged text message from Jessica which Hickman argues demonstrates that he was not at the scene at the time of the shooting, we note that the text message was sent at 11:54 p.m. and trial evidence established that the shooting occurred near 12:14 a.m. Hickman does not argue that the shooting did not take place at 12:14 a.m. It is thus unlikely that the police were raiding Jessica's home 20 minutes before the shooting took place. Moreover, we agree with the State that this text message does not show that Hickman was not at the scene 20 minutes after it was allegedly sent. This text message does not establish Hickman's alibi and trial counsel was not deficient in failing to adduce evidence from witnesses regarding it. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument to the trial court. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

Because we find that Hickman's trial counsel was not ineffective in this regard and that Hickman cannot show deficient performance, his appellate counsel was not ineffective in failing to raise the claim on direct appeal.

Hickman's claims asserted in his motion for postconviction relief are either procedurally barred or are affirmatively refuted by the record. Thus, Hickman was not entitled to an evidentiary hearing. The district court did not err in so finding. This assignment of error fails.

## CONCLUSION

The district court did not err in denying Hickman's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.