IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HIBLER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID J. HIBLER, JR., APPELLANT.

Filed April 26, 2022.    No. A-21-312.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Peder Bartling, of Bartling Law Offices, P.C., L.L.O., and Sean M. Conway, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

David J. Hibler, Jr., appeals from the Lancaster County District Court's denial of his postconviction motion without an evidentiary hearing. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

In 2017, a jury convicted Hibler of first degree sexual assault of a child, incest with a person under the age of 18 years, and third degree sexual assault of a child. Thereafter, Hibler was sentenced to 20 to 25 years' imprisonment for the first degree sexual assault of a child conviction; 18 to 20 years' imprisonment for the incest conviction; and 2 to 3 years' imprisonment for the third degree sexual assault of a child conviction, with all sentences ordered to be served concurrently. A full recitation of the facts can be found at *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019). Relevant facts from the trial will be discussed in the analysis section of this opinion.

- 1 -

Hibler timely filed a direct appeal during which he was represented by different counsel than trial counsel. In his direct appeal, Hibler contended that the district court erred when it rejected his constitutional challenge to Neb. Rev. Stat. § 28-319.01 (Reissue 2016); when it made several erroneous evidentiary rulings including admitting entries from the victim's diary, excluding relevant text messages, preventing Hibler from examining the victim's mother as it related to the victim's mother's military discharge, employment, and mental health history; when it found the evidence was sufficient to support his convictions of first degree sexual assault of an child and incest because the State did not prove the element of penetration; and that he received ineffective assistance of trial counsel. Specifically, in his direct appeal, Hibler claimed 24 separate bases for trial counsel ineffectiveness. The Nebraska Supreme Court affirmed Hibler's convictions and sentences. See *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019). In doing so, the Court identified Hibler's ineffective assistance of counsel claims, as restated and consolidated, as follows:

(1) failing to object to the testimony of J.H.'s friend regarding what J.H. told her when they met at the school playground;

(2) failing to impeach and cross-examine three members of law enforcement, A.H., and J.H. regarding differences in trial testimony concerning the processing of J.H.'s tablet computer and the testimony of some of the law enforcement officers in their depositions and a police report;

(3) failing to subpoena or move to compel the State to turn over a "Cellebrite report," a computer forensics software program used to extract an exact copy of the data or information stored on the device, which law enforcement generated during data extraction of the tablet computer;

(4) failing to engage an independent forensic computer examiner to review the reports and data extractions performed on the tablet computer;

(5) failing to mount a foundational challenge to the diary entries based on a broken chain of custody of the tablet computer, because officers gave conflicting deposition testimony concerning the tablet;

(6) failing to move for a continuance when the State produced an approximately 18,000-page Cellebrite report containing the contents of A.H.'s cell phone on the first day of trial;

(7) failing to investigate or obtain bank records or cross-examine A.H. on her removal of $2,300 from a joint account with Hibler just prior to the time A.H. testified that Hibler made confessions to her;

(8) failing to cross-examine A.H. and J.H. and present evidence of the family's account with a media service provider concerning the movie they testified to watching in March 2016 that would show they watched a movie about child sexual assault prior to J.H.'s disclosure to her friends;

(9) failing to introduce evidence of an episode of a television show concerning victims of crimes which the family had watched and, instead of introducing this evidence or cross-examining J.H., only asking J.H. if it was one of her favorite shows, to which she responded, "No";

(10) failing to cross-examine A.H. or investigate the facts that the purple underwear which tied on the sides and was entered as an exhibit was clothing A.H. wore as an exotic dancer, that it was stored in a suitcase in a storage room, and that A.H. would have noticed if Hibler had searched through the suitcase and brought out the underwear;

(11) failing to cross-examine A.H. and present evidence that A.H. was discharged from military service because she lied about her mental health diagnosis on her enlistment forms;

(12) failing to investigate the online relationship A.H. had with a man she described as living in Hawaii, where such investigation would have revealed the relationship was significant and ongoing;

(13) failing to investigate or adequately cross-examine A.H. concerning previous efforts to take custody of their children from Hibler;

(14) failing to investigate and present evidence that J.H. made a false allegation against A.H.'s uncle in Arizona;

(15) failing to thoroughly investigate or cross-examine witnesses concerning the fact that the father of one of J.H.'s friends to whom she disclosed the abuse at the playground said the disclosure happened in March, not February, which information was revealed in the Cellebrite report provided to Hibler on the first day of trial;

(16) failing to subpoena or otherwise obtain records from the Ronald McDonald House in Kansas City, Missouri, which would have demonstrated the sexual assaults could not have occurred as J.H. testified, because A.H. was not in Kansas City at the times asserted by A.H. and J.H. at trial;

(17) failing to subpoena or investigate witnesses and failing to cross-examine Hibler's father when he testified at trial concerning the fact that Hibler almost never drank alcohol;

(18) failing to examine two law enforcement officers regarding the police report that was generated after J.H.'s deposition in which she testified that the tablet computer had been returned to her possession and that she agreed not to do anything with it until the completion of the trial;

(19) failing to recall A.H. and J.H. during trial to rebut the State's case on matters discussed above;

(20) representing to the jury during closing arguments that Hibler might have committed some of the alleged acts even though Hibler specifically told trial counsel he did not engage in any sexual touching of J.H.;

(21) advising Hibler not to testify when Hibler informed trial counsel he did not engage in any sexual touching of J.H.;

(22) failing to cross-examine any of the police officers who testified as to the reasons for the delay of at least 1 year of the interviews of the children who were present at the playground where J.H. initially disclosed the sexual assaults;

(23) failing to cross-examine J.H.'s friend and the principal regarding who walked J.H. back to her classroom following her interview with the principal and teacher where police reports contradict the principal's testimony concerning who J.H. interacted with in the minutes following the interview; and

(24) failing to subpoena witnesses from the school who would have testified that J.H. had been caught lying to school officials about unrelated matters in the time prior to her allegations against Hibler.

*State v. Hibler*, 302 Neb. 325, 348-51, 923 N.W.2d 398, 418-19 (2019). The court specifically found that the record was sufficient on direct appeal to resolve claims Claim 1, 11, 19, and 20. The court found that Hibler's 20 remaining ineffective assistance of counsel claims could not be resolved on direct appeal. Regarding these claims, the Nebraska Supreme Court specifically found:

> For the reasons stated above, in this direct appeal from a jury trial, we reject Hibler's facial state and federal constitutional challenges to the age classifications defining first degree sexual assault of a child and the corresponding mandatory sentence in § 28-319.01 (1)(a) and (2). We conclude that the district court did not abuse its discretion with regard to the evidentiary rulings challenged by Hibler. The evidence at trial was sufficient to establish the element of sexual penetration to support Hibler's convictions for sexual assault of a child in the first degree and incest with a person under 18 years of age. See §§ 28-319.01 and 28-703. Finally, the record is insufficient to resolve the majority of Hibler's claims of ineffectiveness of trial counsel on direct appeal. However, we review and reject certain of these claims as described above. We affirm Hibler's convictions and sentences for first degree sexual assault of a child, incest with a person under 18 years of age, and third degree sexual assault of a child.

*State v. Hibler*, 302 Neb. 325, 352-53, 923 N.W.2d 398, 420 (2019).

Hibler timely filed a 137-page motion for postconviction relief setting forth 29 claims including claims that had been preserved during his direct appeal plus new layered claims alleging that trial counsel provided ineffective assistance in certain respects and that his appellate counsel was ineffective by failing to raise such claims of ineffective assistance on direct appeal. The district court denied Hibler's motion for postconviction relief without an evidentiary hearing. In doing so, the district court specifically noted that, as to all 29 claims raised in Hibler's motion for postconviction relief:

> One of the claims is a claim that was neither raised on direct appeal nor raised as a layered ineffective assistance claim. Eight of the claims are layered ineffective assistance claims in which [Hibler] alleges that his appellate counsel was ineffective for failing to raise the claims of ineffective assistance of trial counsel on direct appeal. The remaining twenty claims are reassertions of claims that were raised on direct appeal but were not resolved by the Nebraska Supreme Court.

The district court ultimately found, after analyzing the 29 claims at length, that "[f]or the reasons stated above, the court finds that all of the claims raised are either insufficiently pled, affirmatively refuted by the record, or [Hibler] cannot show that he was prejudiced," and that Hibler "was not entitled to an evidentiary hearing" and dismissed Hibler's motion for postconviction relief. Hibler has now appealed the dismissal of that motion.

### III. ASSIGNMENT OF ERROR

Hibler's sole assignment of error, restated, is that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. He asserts that various claims of ineffectiveness by his trial counsel and appellate counsel entitled him to an evidentiary hearing.

### IV. STANDARD OF REVIEW

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021).

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling. *Id.*

### V. ANALYSIS

Hibler asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. Although Hibler alleged 29 different claims of ineffective assistance of counsel in his motion for postconviction relief, all of which were rejected by the district court, he argues only nine of those claims in connection with this appeal. The first two relate to claims of ineffective assistance of trial counsel preserved on direct appeal. The remaining seven claims represent layered claims that his appellate counsel was ineffective for failing to raise errors of trial counsel on direct appeal. Hibler generally argues that each of those nine claims should have entitled him to an evidentiary hearing. The two claims argued in Hibler's brief governing his trial counsel's ineffective assistance allege that the district court erred in failing to grant Hibler an evidentiary hearing in connection with his trial counsel's failure to (a) investigate and present an alibi defense and (b) move for a continuance when the State produced a Cellebrite report containing the contents of A.H.'s cell phone on the first day of trial. The seven claims argued in Hibler's brief governing his appellate counsel's ineffective assistance (layered claims) allege that his appellate counsel failed to raise and preserve on direct appeal his trial counsel's failure to: (a) challenge the State's charging instrument for lack of specificity; (b) file a motion in limine and object to testimony regarding a sexual assault that occurred outside of Lancaster County; (c) investigate and present evidence on issues related to the victim's iPad; (d) file a motion in limine and object to A.H.'s testimony concerning an unrelated sexual incident; (e) object to the State's closing argument; (f) renew his motion for directed verdict; and (g) object to jury instructions 3 and 6. We will analyze the two claims preserved from his direct appeal and his layered claims of ineffective assistance of his appellate counsel separately.

As to all such claims, a court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v.*

*Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021). However, in a postconviction proceeding, an evidentiary hearing is not required: (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). In the absence of alleged facts that would render the judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing. *Id.*

### 1. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Of the 20 claims preserved from his direct appeal, in connection with this appeal, Hibler only argues that two of these entitled him to an evidentiary hearing. The first claim relates to item number 16 in the Nebraska Supreme Court's opinion in *State v. Hibler*, 302 Neb. 325, 350, 923 N.W.2d 398, 419 (2019), wherein Hibler alleged his trial counsel was ineffective in "failing to subpoena or otherwise obtain records from the Ronald McDonald House in Kansas City, Missouri, which would have demonstrated the sexual assaults could not have occurred as J.H. [the victim] testified, because A.H. [the victim's mother] was not in Kansas City at the times asserted by A.H. and J.H. at trial." Hibler argues he was entitled to an evidentiary hearing regarding this claim that his trial counsel was ineffective for failing to pursue these records to create an alibi defense.

The second claim relates to item number six in the Nebraska Supreme Court's opinion in *State v. Hibler, supra*, wherein Hibler alleged that his trial counsel was ineffective for failing to move for a continuance when the State produced a Cellebrite report containing the contents of A.H.'s cell phone on the first day of trial.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Assad,* 304 Neb. 979, 938 N.W.2d 297 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* The two prongs of the ineffective assistance of counsel test under Strickland may be addressed in either order. *Id.*

### (a) Records From Ronald McDonald Charity House

Hibler's first claim preserved relates to trial counsel's failure to investigate an alibi defense.

A defendant asserting an alibi defense bears a heavy evidentiary burden. To establish an alibi defense, a defendant must show (1) he or she was at a place other than where the crime was committed and (2) he or she was at such other place for such a length of time that it was impossible to have been at the place where and when the crime was committed. *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021).

In connection with his direct appeal, Hibler contended (as depicted in item 16 from the Supreme Court's opinion in *State v. Hibler, supra*) that his trial counsel should have obtained or subpoenaed records from the Ronald McDonald House (RMCH) in Kansas City to establish that

Hibler was not physically present with the victim during the times that the victim alleged Hibler assaulted her and could not have committed the offenses. We first note that, as to this allegation, the district court found that Hibler failed to raise this claim on direct appeal and, in his postconviction motion, failed to separately raise this claim as a layered claim of ineffective assistance of trial counsel. Although we agree that in his postconviction motion Hibler did not raise this claim as a layered claim, we disagree that Hibler failed to preserve this claim on direct appeal and find that he did preserve it on direct appeal and in his postconviction motion as a claim of ineffective assistance of his trial counsel. As such, we will analyze whether Hibler was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective for failing to subpoena records from RMCH in order to establish an alibi defense.

The State charged Hibler with first degree sexual assault of a child, third degree sexual assault, and incest relating to incidents which occurred between January 1, 2014, to March 17, 2016. At trial, the victim testified that Hibler began sexually abusing her shortly after she won a soapbox derby and that the abuse ended sometime before February 2016. Although the victim was unable to remember specific dates of the specific incidents, she believed that the incidents occurred when A.H. was out-of-town for the victim's brother's cancer treatment. A.H. testified that medical treatments for the victim's brother occurred between October 15, 2015, and February 2016, and included four monthly scheduled treatments in Kansas City, one of which was an overnight visit, and along with overnight emergency room (ER) visits. Specifically, A.H. testified that she spent three nights at an ER in Lincoln, Nebraska, in October 2015; one night at RMCH in October 2015; and three consecutive nights in Kansas City at a separate location for a research study in January 2016. A.H. testified she was unable to provide specific dates that Hibler accompanied her or remained home but generally testified that Hibler did not accompany her for the three emergency overnight visits or the three-day research study. She testified that on some occasions, Hibler joined her for a day or two into the trips.

Hibler claims that if counsel had obtained the records from RMCH directly, it would have provided him with an alibi for the alleged assaults. However, from our review of the record, counsel conducted discovery and cross-examined A.H. regarding the dates and length of medical visits. Of the overnight visits, only one appeared to have been at the RMCH. Consequently, even if counsel requested records from RMCH, the date would only have related to one such occasion when A.H. was out of town with the victim's brother. Nor does it necessarily correlate with a time that J.H. alleged Hibler sexually assaulted her, as she testified she was uncertain as to the specific dates but that the assaults started in October 2015 and ended prior to February 2016.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Assad*, 304 Neb. 979, 938 N.W.2d 297 (2020). We have characterized "prejudice," in the context of alleged ineffective assistance of counsel, as a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Robinson*, 271 Neb. 698, 710, 715 N.W.2d 531, 546 (2006); *State v. Williams,* 224 Neb. 114, 396 N.W.2d 114 (1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Robinson, supra*; *State v. Williams, supra*. We find the record

sufficiently refutes Hibler's claim that he was prejudiced by his trial counsel's failure to subpoena records from A.H.'s overnight stays at RMCH.

Although Hibler appears to expand on his argument by referencing other dates that the victim was not alone with Hibler in relation to other incidents not involving RMCH, we find that Hibler failed to preserve these claims of ineffective assistance of his appellate counsel in his motion for postconviction relief. As such, we will not analyze those claims any further.

(b) Failure to Request Continuance

Second, Hibler contends that trial counsel was ineffective for failing to move for a continuance when the State committed a *Brady* violation by producing a Cellebrite report containing the contents of A.H.'s cellphone on the first day of the trial. This claim was preserved in Hibler's direct appeal as item six, raised in his postconviction motion, and then argued in his brief on appeal.

In Nebraska, discovery in criminal cases is governed by statute, and Neb. Rev. Stat. § 29-1912 (Reissue 2016) exacts more than the constitutional minimum. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). Nevertheless, if a continuance would have been a sufficient remedy for a belated disclosure in violation of § 29-1912, a defendant who fails to request a continuance waives any rights he or she may have had pursuant to § 29-1912. *Id.* The decision as to whether to grant a continuance in a criminal case is within the discretion of the trial court. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to determine whether counsel was ineffective for failing to move for a continuance after discovering a *Brady* violation, we first turn to whether there was a *Brady* violation by the State.

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), a prosecuting authority must provide a defendant in a criminal case with all exculpatory evidence that said defendant could use to defend himself at trial. Exculpatory evidence is evidence that might exonerate the defendant and the so-called "*Brady* material" consists of exculpatory or impeaching information and evidence that is material to the guilt or innocence or to the punishment of the defendant. *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017). There are three components of a true *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). No *Brady* violation exists when material evidence is disclosed prior to end of trial. *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013). Further, the mere determination that evidence is withheld does not automatically indicate that the prosecution violated its *Brady* duty. *State v. Lykens*, 271 Neb. 240, 710 N.W.2d 844 (2006). The term "*Brady* violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence, that is, to any suppression of so-called "*Brady* material," although, strictly speaking, there is never a real "*Brady* violation" unless the nondisclosure is so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. *Id.*

Here, discovery was granted by the district court on November 15, 2016, with compliance ordered within 14 days. On October 20, 2017, the court issued a "Protective Order for Release of

Cellebrite Report" requiring the State to provide Hibler a copy of the report to assist in preparation for trial. On October 23, the State provided Hibler's counsel with a Cellebrite report of the extraction from A.H.'s cellphone which report included multiple photographs, recordings, text messages, videos, and other data. Hibler contends that the report contained data regarding meetings A.H. had with Hibler, information on the admissions Hibler made to A.H., communication with another male, and communication that implicated A.H.'s truthfulness in the context of the parties' divorce.

During the course of the trial, Hibler's trial counsel specifically indicated that he had no objection to the Cellebrite report when the State sought to admit it and then separately attempted to utilize portions of the report in the defense's case-in-chief. For example, during the defense's case-in-chief, trial counsel specifically stated:

> We have marked as Exhibit 29, at least at this time a portion or abstract from the Cellebrite report of [A.H.'s] phone provided to the defense late last week. We used portions of it during the State's case. When we were reviewing it, we came across this portion of a text message, instant message threat, between [A.H.] and [Hibler] around May 8th which is the -- I would say about 10 days or so, if I do my math, after two conversations in which [A.H.] claims that [Hibler] had fully confessed once and not so much detail and later in considerable detail.
>
> There are aspects of the conversation in which we believe [A.H.'s] responses, maybe they are verbal acts and maybe not offered for the truth of the matter asserted. But our position would be this piece of evidence is inconsistent with her claim that within a few days or ten days earlier, [Hibler] on two occasions had confessed some sort of complicity in the assaults on [the victim] and by that time she already had taken that information to the police.
>
> Now there are things in there beyond that. But I would like to get at least her response to [Hibler's] protestations that he didn't do anything wrong and that she is the one that is making these statements and her response is -- well, just tell the truth. She is not saying that you have already told the truth. I have told the police. This conversation sounds like just the opposite occurred, that there wasn't any confession, there wasn't any truth telling by [Hibler] and I ought to be able to use the text messages. They are the best evidence of what was said. I don't know that we gain anything by just having her read them into the record. If there are portions of that message between 10:46:06 and 10:46:16 that may be outside of that limited purpose, they can be excised or take a black marker to them. But I wanted to bring the entirety of the conversation to the court's attention and work backwards from there.
>
> I believe this would be relevant. I can call . . . [A.H.] if necessary so she can explain herself or whatever. But I think this is a critical piece of evidence.

Hibler's specific assignment of error here is that his trial counsel was ineffective for failing to move for a continuance following his discovery of a *Brady* violation involving the State's late production of the Cellebrite reports. To that end, Hibler simply and vaguely asserts that the late disclosure impeded his ability to prepare for trial. As we stated before, no *Brady* violation exists

- 9 -

when material evidence is disclosed prior to the end of trial. To that end, we reject the assertion that trial counsel was ineffective for failing to act following the discovery of a *Brady* violation. Regardless, the relevant inquiry here is whether counsel was ineffective for failing to move for a continuance following the late disclosure of the report. We reject that claim for two reasons. First, the record reveals that trial counsel did review the report because counsel attempted to utilize it in connection with Hibler's defense. Second, Hibler's allegation is devoid of any specific component of the report which he claims his counsel was unable to timely discover due to the late disclosure which would have impacted his defense. Stated differently, Hibler has failed to sufficiently plead how the late disclosure of the report resulted in any prejudice to him. This specific assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Next, Hibler argues in his brief that he was entitled to an evidentiary hearing for his asserted claims of ineffective assistance of appellate counsel. We first note that Hibler's brief states that:

> In his "Verified Petition For Postconviction Relief," Hibler reasserted twenty (20) ineffective assistance of counsel claims that the Nebraska Supreme Court did not resolve on direct appeal. . . . As [Hibler's] Brief has addressed the majority of said claims heretofore, Hibler reasserts said claims herein as if set forth fully.

Brief for appellant at 40. We interpret this paragraph as an attempt to preserve claims raised in Hibler's motion for postconviction relief which are not specifically argued in the brief for appellant. To the extent that Hibler is attempting to do so, we decline to consider any claims not argued in his brief. See *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Hibler specifically argues that his appellate counsel was ineffective for failing to preserve claims of Hibler's trial counsel's ineffectiveness for failing to: (a) challenge the information for lack of specificity; (b) file a motion in limine and object to testimony regarding a sexual assault that occurred outside of Lancaster County; (c) investigate and present evidence on issues related to the victim's iPad; (d) file a motion in limine to exclude A.H.'s testimony concerning an unrelated sexual incident and not objecting to the testimony at trial; (e) object to the State's closing argument; (f) renew his motion for directed verdict; (g) and object to jury instructions 3 and 6. Because these ineffective assistance of appellate counsel claims have been properly preserved for our review, we proceed to consider them in turn.

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel, known as a layered claim of ineffective assistance of counsel, an appellate court will look at whether trial counsel was ineffective under the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) test; if trial counsel was not ineffective, then defendant was not prejudiced by appellate counsel's failure to raise the issue. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). Much like claims of ineffective assistance of trial counsel, a defendant claiming ineffective assistance of appellate

counsel must show under *Strickland* that (1) his or her counsel's performance was deficient; and (2) this deficient performance actually prejudiced the defendant's defense. *Id.*

To show that counsel's performance was "deficient," as required to support a claim of ineffective assistance of counsel, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). In determining whether trial counsel's performance was deficient, as part of claim that appellate counsel rendered ineffective assistance due to its failure to raise a claim on appeal of ineffective assistance of trial counsel, courts give trial counsel's acts a strong presumption of reasonableness. *State v. Parnell, supra*.

To show prejudice under the *Strickland* test for ineffective assistance of counsel, an appellant must show that but for counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different. *Id.* The appellant must demonstrate a "reasonable probability" that but for his or her counsel's deficient performance, the result of the proceeding would have been different; a "reasonable probability" does not require that it be more likely than not that the deficient performance altered the outcome of the case but, rather, defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id.* Counsel's failure to raise an issue on appeal can be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id.*

(a) Specificity of Information

Hibler first asserts that he received ineffective assistance of appellate counsel due to counsel's failure to raise on direct appeal that trial counsel was ineffective in failing to file a motion to quash the information due to a lack of specificity of dates upon which the alleged sexual assault took place, failing to file a bill of particulars requesting specificity of those dates, and failing to object to the information.

Regarding the charge of first degree sexual assault of a child, contrary to Hibler's claim, the record reflects that, in October 2017, Hibler's trial counsel filed a motion to quash the charges contained in the information relating to § 28-319.01(2), the first degree sexual assault of a child claim. Therefore, Hibler's claim that trial counsel was ineffective for failing to file a motion to quash related to the charge of first degree sexual assault of a child is refuted by the record. Having found that trial counsel was not ineffective in this context, it follows that appellate counsel was not ineffective for failing to preserve this claim on direct appeal. *State v. Dubray*, 294 Neb. 937, 941, 885 N.W.2d 540, 547 (2016) (if trial counsel was not ineffective, then defendant was not prejudiced by appellate counsel's failure to raise issue).

Regarding the charged offense of third degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-320.01(3) (Reissue 2016), in the absence of demonstrated prejudice to a defendant's substantial right, a formal charge in prosecuting a criminal offense - an indictment, information, or complaint - alleging a date or period within the statutory time specified to

commence prosecution for the crime charged is sufficient, unless the particular offense charged requires establishment of a specific time as an essential element of that crime charged. *State v. Wehrle*, 223 Neb. 928, 395 N.W.2d 142 (1986). To that end, the Nebraska Supreme Court has held that as to the crime of third degree sexual assault of a child in violation of § 28-320.01(3), the exact date of the offense is not an essential element of the crime. *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015). As the Nebraska Supreme Court noted in *Samayoa*:

> This holding is consistent with our previous determination in *State v. Wehrle, supra,* that the date of commission is not an essential element of first degree sexual assault, which can also require proof of the defendant's and victim's ages. See Neb. Rev. Stat. § 28-319(1) (Reissue 2008). It also recognizes and accommodates the unique circumstances surrounding young victims, who "are often unsure of the date on which the assault or assaults occurred" and "may have no meaningful reference point of time or detail by which to distinguish one specific act from another." See *State v. Martinez,* 250 Neb. 597, 600, 550 N.W.2d 655, 658 (1996). See, also, *Sledge v. State,* 903 S.W.2d 105 (Tex. App. 1995).

292 Neb. at 343, 873 N.W.2d at 456.

For the reasons outlined in *Samayoa* and *Wehrle*, we find that the State's information charging Hibler with third degree sexual assault of a child was sufficiently pled. Thus, any motion to quash filed on the basis that the information failed to allege the specific dates of this offense would have been denied. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument to the trial court. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Thus, the claim that trial counsel was ineffective in failing to file a motion to quash the charged offense of third degree sexual assault of a child fails.

Regarding the charged offense of incest, Neb. Rev. Stat. § 28-703(1) (Reissue 2016) provides that "[a]ny person who shall knowingly intermarry or engage in sexual penetration with any person who falls within the degrees of consanguinity set forth in section 28-702 or any person who engages in sexual penetration with his or her stepchild who is under nineteen years of age commits incest." Although the Nebraska Supreme Court has not previously found that the exact date of that offense is not an essential element of the crime of incest, the court's reasoning in determining that the exact date of the commission of the offense was not a substantive element in the offenses of first, second, and third degree assault of a child is instructive.

In *State v. Samayoa*, 292 Neb. 334, 343, 873 N.W.2d 449, 456 (2015), the Nebraska Supreme Court explained:

> Given the statutory definitions of first and third degree sexual assault of a child, we reject [the appellant's] argument that the exact date of offense is an essential element of those crimes. Neither under federal law nor under Nebraska law is the exact time of the commission of an offense regarded as a substantive element in the charge or proof thereof, unless the statute involved makes it so or is clearly intended to have that effect. *Huffman v. Sigler,* 352 F.2d 370 (8th Cir. 1965). See, also, *State v. Wehrle,* 223 Neb. 928, 395 N.W.2d 142 (1986); *State v. Harig,* 192 Neb. 49, 218 N.W.2d 884 (1974). In the case of sexual assault of a child, the statutes involved do not make the time or date of the offense an element of the crime. Sections 28-319.01(1) and 28-320.01 require proof that the sexual

- 12 -

penetration or sexual contact occurred when the defendant and victim were certain ages. But they do not require proof that such event occurred on a specific date. We therefore conclude that the exact date of commission is not a substantive element of first, second, or third degree sexual assault of a child.

Similar to the elements of first, second, and third degree sexual assault, the elements of incest do not require the specific date of commission, although the statute does require the State to establish that the victim was under nineteen years of age. We believe that the Nebraska Supreme Court's statement in *State v. Wehrle*, 223 Neb. 928, 934, 395 N.W.2d 142, 147 (1986) is controlling:

> . . . in the absence of demonstrated prejudice to a defendant's substantial right, a formal charge in prosecuting a criminal offense--an indictment, information, or complaint--alleging a date or period within the statutory time specified to commence prosecution for the crime charged is sufficient, unless the particular offense charged requires establishment of a specific time as an essential element of that crime charged.

See also *State v. Martinez*, 250 Neb. 597, 550 N.W.2d 655 (1996) (where information provides timeframe which has distinct beginning and equally clear end within which crimes are alleged to have been committed, it is sufficient to satisfy requirements of Sixth Amendment). Because the statutory elements of incest do not require the State to establish that the offense was committed on a specific date, an information which provides a timeframe which has a distinct beginning and end is sufficient to satisfy the requirement of the Sixth Amendment. Accordingly, because a motion to quash based on a lack of specific date of the alleged offense of incest would have been denied, we cannot find that trial counsel was deficient for failing to file one. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument to the trial court. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). And, having found that trial counsel was not ineffective in this context, it follows that appellate counsel was not ineffective for failing to preserve the claim on direct appeal. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016) (if trial counsel was not ineffective, then defendant was not prejudiced by appellate counsel's failure to raise the issue).

(b) Events Outside of Lancaster County

Hibler next alleges that he received ineffective assistance of appellate counsel for failing to raise and preserve trial counsel's failure to file a motion in limine or object to the victim's testimony regarding another sexual assault by Hibler involving the same victim that occurred outside of Lancaster County. Hibler asserts that the victim's testimony that Hibler massaged and touched her vagina in 2015 in Douglas County was inadmissible and effective trial counsel would have filed a motion in limine to exclude the testimony under rules 401, 403, and 404; would have objected to the introduction of the testimony; or would have requested a limiting instruction. Additionally, Hibler contends that appellate counsel's failure to preserve the error on direct appeal denied him the opportunity to present an issue of constitutional magnitude in his postconviction motion. We disagree.

- 13 -

It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Rev. Stat. §§ 27-403 and 27-404(2) (Reissue 2016), and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015); *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012). Rule 404 provides in part that:

> (2) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident.
>
> (3) When such evidence is admissible pursuant to this section, in criminal cases evidence of other crimes, wrongs, or acts of the accused may be offered in evidence by the prosecution if the prosecution proves to the court by clear and convincing evidence that the accused committed the crime, wrong, or act. Such proof shall first be made outside the presence of any jury.

Rule 404(2), however, does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Parnell,* 294 Neb. 551, 883 N.W.2d 652 (2016). Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *Id.*

In this case, the victim reported that during the four-month period, one of the alleged assaults took place at her grandfather's home in Omaha, Nebraska. This assault occurred in the same timeframe as the other incidents and involved the same victim. The district court found that this evidence was inextricably intertwined with the Lancaster County assaults. Hibler asserts that he was entitled to an evidentiary hearing under Rule 404(3) governing the admissibility of this evidence and that the trial court failed to fulfill its obligation to consider the admissibility of the events outside of Lancaster County under evidentiary rule 404. He contends that trial counsel was ineffective in failing to raise the issue with the district court. Thereafter, Hibler claims his appellate counsel was likewise ineffective for failing to raise and preserve this claim on direct appeal. We disagree.

From our review of the record, the testimony governing the sexual assault occurring in Douglas County formed the basis of a pattern of continuing sexual assaults of the victim which occurred during the four-month time period when the victim's mother was caring for the victim's brother. The fact that one of the assaults occurred outside of Lancaster County does not render it unrelated to the other assaults or any more prejudicial than the testimony of the other incidents. Instead, the act occurring in Douglas County was of a similar nature occurring during the same time period as the crimes charged and presented a coherent picture of the charged crimes. See *State v. Lee*, 304 Neb 252, 934 N.W.2d 135 (2019) (holding State is entitled to present coherent picture of facts of crime charged and evidence of other conduct that forms integral part of crime charged is not rendered inadmissible under Rule 404 merely because acts are criminal but have not been

charged). The Nebraska Supreme Court has stated that bad acts that form the factual setting of the crime in issue or that form an integral part of the crime charged are not covered under § 27-404(2). *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). Therefore, any objection or motion to require a separate hearing governing his testimony under Rule 404 would have been meritless. See *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020) (as matter of law, counsel is not ineffective for failing to make meritless objection). Further, as to Hibler's separate argument that the testimony was unfairly prejudicial to him, the Nebraska Supreme Court has stated:

> The Neb. Rev. Stat. § 27-403 unfairly prejudicial analysis cannot be based on the fact that evidence of sexual misconduct propensity evidence would be prejudicial. Of course, the more probative the evidence is in establishing a similar deviant sexual propensity the more prejudicial the evidence becomes, but such prejudice is not unfair under § 27-403 because of its enhanced probative value.

*State v. Lierman*, 305 Neb. 289, 299, 940 N.W.2d 529, 540 (2020) quoting 3 R. Collin Mangrum, Mangrum on Nebraska Evidence § 27-414[D](5) at 334 (2019). Similarly, although the separate deviant act occurring in Douglas County may have been prejudicial to Hibler, it cannot be considered unfair under § 27-403 because of its enhanced probative value.

We find that trial counsel was not ineffective for failing to file a pretrial motion to exclude the victim's testimony regarding the Douglas County sexual assault as that argument would have been meritless. Correspondingly, appellate counsel cannot be ineffective for failing to raise a meritless argument. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Therefore, this argument fails.

### (c) Victim's iPad

Hibler next argues that his appellate counsel was ineffective for failing to raise on direct appeal that his trial counsel was ineffective for failing to pursue legal avenues to obtain the Cellebrite reports generated from the victim's iPad which compromised counsel's ability to depose witnesses and effectively challenge those reports at trial. Specifically, Hibler argues that the State performed Cellebrite extractions from the victim's iPad on April 1 and 13, 2016; obtained the victim's diary entries from the second extraction which the State then used at trial; failed to disclose the reports from the April 13 extraction by the time trial counsel deposed the victim in January 2017 and deposed law enforcement personnel Donovan and Duncan in April 2017; and never produced the reports in advance of trial, thereby compromising trial counsel's ability to cross-examine witnesses, argue chain of custody, or make objections to the diary entries during the course of trial. Hibler then argues that "[a] direct-appeal attorney with ordinary skill and training would have preserved the issue concerning trial counsel's performance by raising it on direct appeal. He did not." Brief for appellant at 29. The record is to the contrary.

In connection with Hibler's direct appeal, the Nebraska Supreme Court spelled out that Hibler's appellate counsel preserved the following claims of ineffective assistance of counsel in connection with the Cellebrite reports from the victim's iPad:

> (2) failing to impeach and cross-examine three members of law enforcement, A.H., and J.H. regarding differences in trial testimony concerning the processing of J.H.'s tablet

computer and the testimony of some of the law enforcement officers in their depositions and a police report;

(3) failing to subpoena or move to compel the State to turn over a Cellebrite report generated during data extraction of the tablet computer;

(4) failing to engage an independent forensic computer examiner to review the reports and data extractions performed on the tablet computer; [and]

(5) failing to mount a foundational challenge to the diary entries based on a broken chain of custody of the tablet computer, because officers gave conflicting deposition testimony concerning the tablet.

*State v. Hibler*, 302 Neb. 325, 349, 923 N.W.2d 398, 418 (2019).

In short, Hibler's appellate counsel did raise the issue that trial counsel was ineffective for failing to obtain discovery of the Cellebrite reports and for failing to further attack the reports and victim's diary entries at trial. As such, Hibler's claim that his appellate counsel was ineffective for failing to preserve this claim on direct appeal is refuted by the record.

For the sake of clarity, we further note that had Hibler's postconviction counsel preserved these claims on appeal from his postconviction motion, the record indicates that contrary to Hibler's assertion that extractions of J.H.'s iPad occurred on April 1 and 13, 2016, the extraction took place on April 13, 2016. The diary entries that were later utilized at trial were not discovered by the State until May 2017 when it performed an examination from that April 13, 2016, extraction. Thus, the diary entries were not discovered by the State until after the depositions of J.H., Duncan, and Donahue had been taken. Regarding the contents obtained from the May 2017 examination, Hibler's counsel cross-examined the witness at trial as it related to his theory that the diary entries obtained were somehow compromised between April 1 and April 13, 2016, by J.H. so as to suggest of a lack of authenticity. But as to that theory, the record further reveals that the iPad was in police custody from April 1 to April 13 and the diary entries were discovered in May 2017 from the extraction which occurred on April 13 while the iPad remained in police custody.

Further, other than suggesting that Hibler's trial counsel was generally compromised by not having the April 13, 2016, extraction produced earlier, he fails to specifically allege what a more timely production of the extraction would have revealed, instead only suggesting there would have been more time to review and test its contents while generally averring in his postconviction motion that

Had trial counsel obtained the Cellebrite report(s)/report(s) from Donahue's extraction--as the Court's discovery order authorized--he, at the very least, would have been able to investigate said report(s) in the pursuit of Hibler's defense, including consulting/obtaining a forensic expert in the field of iPad evidence to review the Cellebrite report(s)'report(s) from the iPad and/or to review the iPad/iPad data independently to assess the validity of LPD's [Lincoln Police Department's] evaluation of the device. Had trial counsel investigated such issues properly, Hibler avers that an independent, qualified forensic expert would have testified that the diary entries that the State attributed to J.H. at trial-- admitted into evidence as Exhibit 24--were not made contemporaneously to the events/incident in question but were made at another time, authored by a third-party and/or

- 16 -

altered by a third-party after LPD conducted its first extraction on April 1, 2016, in an effort to bolster J.H.'s credibility to strengthen the State's case against Hibler. Had trial counsel investigated such issues properly, Hibler avers that the testimony of an independent, qualified forensic expert would have negated any significance the jury could have placed on the diary entries; alternatively, trial counsel may have employed the testimony of such an expert to challenge the admissibility of the diary entries into evidence.

Hibler admits that his trial counsel eventually received some materials regarding the iPad and LPD's processing of the device but failed to specifically plead what materials he did not receive; how those relate to the diary entries, if at all; and what specifically is contained in the extraction that would call into question the authenticity of the diary entries. Further, his allegations fail to take into account that the diary entries were eventually obtained from the extraction which occurred on April 13, 2016, while the iPad remained in the possession of police.

In connection with a postconviction claim, the claimant must allege specific allegations of both ineffective assistance of counsel and prejudice. See, *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022) (allegations in motion for postconviction relief must be sufficiently specific for district court to make preliminary determination as to whether an evidentiary hearing is justified); *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016) (motion for postconviction relief must adequately allege how defendant was prejudiced by counsel's actions; prejudice is shown by establishing that *but for* deficient performance of counsel, there is reasonable probability that outcome of case would have been different); *State v. Abdulkadir*, 293 Neb. 560, 878 N.W.2d 390 (2016) (in filing motion for postconviction relief, to be entitled to evidentiary hearing, defendant's postconviction motion must state facts actually amounting to prejudice); *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015) (motion which alleges only conclusions of facts or law is insufficient). Because we find Hibler's appellate counsel was not deficient in failing to raise these claims, and because Hibler has not pled any specific facts governing how counsel's failure to further pursue these reports prejudiced Hibler, we find that the district court did not err in not ordering an evidentiary hearing concerning this allegation.

(d) Motion in Limine or Objection to Exclude Unrelated Sexual Incident

Hibler next argues that appellate counsel was ineffective for failing to raise and preserve trial counsel's failure to file a motion in limine to exclude the testimony by the victim's mother, A.H., concerning an unrelated sexual incident, and for failing to object to that testimony at trial. Hibler contends that the evidence was "per se objectionable" because it was irrelevant, improper character evidence, and unfairly prejudicial. Brief for Appellant at 31. Hibler states that effective trial counsel would have challenged or objected to the admissibility of such evidence by filing a motion in limine or objecting during trial under Nebraska Rule of Evidence 404. Hibler asserts that appellate counsel's failure to raise the claim on direct appeal resulted in prejudice as it prevented Hibler from preserving an issue of constitutional magnitude.

In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). The decision whether or not to object has long been held to be part of trial strategy. *State*

*v. Huston*, 291 Neb. 708, 710, 868 N.W.2d 766, 770 (2015). We further recognized that, when reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id.* Additionally, it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under § 27-404 and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015). Balancing the probative value of the evidence against the danger of unfair prejudice is also within the discretion of the trial court. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019). The fact that the evidence is prejudicial is not enough to require exclusion, because most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party. *Id.* It is only the evidence which has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under § 27-403. *State v. Stubbendieck, supra.*

In this case, A.H. testified that, during conversations with Hibler on April 25 and 26, 2016, he confessed to assaulting the victim. A.H. further stated during that conversation, Hibler said, "while we are here . . . I want to let you know that when I came home from Iraq, I fingered your best friend." Hibler claims his trial counsel was ineffective in failing to file, under § 27-404, a motion in limine to exclude the testimony; object to the introduction of the evidence; move to strike; move for a mistrial; or seek a limiting instruction. Hibler contends that the introduction of this inadmissible testimony resulted in him not receiving a fair trial.

In dismissing this claim, the district court first found there was no allegation that trial counsel knew or should have predicted A.H. would testify at trial about this separate statement involving A.H.'s friend and thus, counsel could not be deficient in failing to file a motion in limine. We agree with that analysis. As to failing to object or move for a mistrial once the statement was made, the first question is whether the statement itself was inadmissible. Hibler argues the statement was inadmissible under § 27-404.

Neb. Rev. Stat § 27-404 (Reissue 2016) provides, in relevant part:

(1) Evidence of a person's character or a trait of his or her character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:

(a) Evidence of a pertinent trait of his or her character offered by an accused, or by the prosecution to rebut the same;

(b) Evidence of a pertinent trait of character of the victim of the crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. In at sexual assault case, reputation, opinion, or other evidence of past sexual behavior of the victim is governed by section 27-412; or

(c) Evidence of the character of a witness as provided in sections 27-607 to 27-609.

(2) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As a threshold matter, whether the statement alleged to have been made by Hibler to A.H. involving his act with A.H.'s friend was admissible (either as character evidence or other bad act), depends on whether it was being offered for the purpose of proving that he acted in conformity therewith on a particular occasion. But that is not necessarily the case in the context in which A.H. offered the statement. In making the statement, A.H. testified that Hibler made the statement to her in connection with his admission of acts involving J.H. To that end, the statement could be considered as contextual evidence of Hibler's state of mind in making the confession as opposed to being offered to prove conforming behavior.

But whether the statement itself was admissible or whether counsel followed a reasonable trial strategy in failing to object to A.H.'s statement, we need not decide. As the district court noted, this was a single statement in a lengthy trial and, in analyzing the prejudice prong of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the district court found that there was simply no reasonable probability that had this statement been excluded, the result of the proceeding would have been different. Having fully reviewed the record, we agree with the district court. After performing a de novo review of the record we find that, assuming that trial counsel had timely objected to A.H.'s statement and assuming that the district court sustained the objection and struck the sentence from the record, there is no reasonable probability that the outcome of this trial would have been different. As such, we reject the claim that Hibler was entitled to an evidentiary hearing governing this claim.

(e) Closing Argument

Hibler next assigns that appellate counsel was ineffective for failing to preserve on direct appeal trial counsel's failure to object to the State's closing argument. Hibler contends that, during closing argument, the prosecutor erroneously equated sexual contact with sexual penetration. Hibler claims that the prosecutor's statements were not supported by the evidence because the victim's testimony only referred to Hibler engaging in "cupping," "massaging," "rubbing," and "swiping" of the victim's vaginal area which does not amount to penetration. Hibler also contends that the State's use of the word "fingering" constituted prosecutorial misconduct because the term is a colloquialism for sexual penetration which unduly and improperly inflamed the jury.

When a prosecutor's comments rest on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014). When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct. *Id.* In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, the appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction. *Id.*

A prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct. *Id.* But if the appellate court concludes that a prosecutor's acts were misconduct, the

appellate court next considers whether the misconduct prejudiced the defendant's right to a fair trial. *Id.* Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole and prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infected the trial that the resulting conviction violates due process. *Id.*

In this case, following Hibler's conviction, he filed a direct appeal challenging the sufficiency of the evidence as it pertained to the element of penetration. The Nebraska Supreme Court stated:

> We have stated that the slightest intrusion into the genital opening is sufficient to constitute penetration, and such element may be proved by either direct or circumstantial evidence. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). It is not necessary that the vagina be entered or that the hymen be ruptured; the entry of the vulva or labia is sufficient. *Id.*

> J.H. did not use the word "penetration" when she testified at trial, but described acts by Hibler in detail sufficient to show penetration had occurred. J.H.'s testimony was consistent with the more anatomically informed testimony of A.H. summarizing J.H.'s reports of the sexual assaults. We have refused to require that a youthful victim testify about sexual acts "in vocabulary used by a gynecologist." *State v. Hirsch,* 245 Neb. 31, 47, 511 N.W.2d 69, 80 (1994). A rational jury could conclude that Hibler's actions described above in our statement of facts section were sufficient to prove penetration. The evidence was sufficient to support the conviction for first degree sexual assault of a child and incest with a person under 18 years of age.

*State v. Hibler*, 302 Neb. 325, 347-48, 923 N.W.2d 398, 417 (2019).

In his motion for postconviction relief, Hibler asserts that trial counsel should have objected to the portions of the State's closing argument which characterized Hibler's conduct as "grooming" and referencing "penetration" and "fingering" which he contends mischaracterized the evidence adduced at trial. However, the record demonstrates that the State was arguing that penetration occurred based upon the evidence presented that Hibler engaged in the acts of "swiping" and "cupping" of the victim's vaginal opening. When considered with the Nebraska Supreme Court's determination that this evidence was sufficient to prove penetration, it follows that the State was permitted to draw this reasonable inference and deduction from the evidence, and there is nothing in this record which indicates that the language used by the State during closing arguments misled the jury. Therefore, we find that the State's closing arguments did not amount to prosecutorial misconduct and any objection by trial counsel would have been meritless. As previously stated, trial counsel cannot be ineffective for failing to raise a meritless argument. See *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). Having found that trial counsel was not ineffective here, it follows that appellate counsel was not ineffective for failing to raise this argument on direct appeal. See *State v. Dubray*, 294 Neb. 937, 941, 885 N.W.2d 540, 547 (2016) (if trial counsel was not ineffective, then defendant was not prejudiced by appellate counsel's failure to raise issue).

## (f) Directed Verdict

Hibler next argues that appellate counsel was ineffective for failing to raise trial counsel's failure to renew his motion for directed verdict at the close of all of the evidence. Hibler contends that he was prejudiced because the State did not establish penetration which was an element of both first-degree sexual assault of a child and incest with a person under the age of 18 years old.

Although Hibler now claims that trial counsel should have renewed the motion for directed verdict at the close of all the evidence, Hibler's direct appeal assigned as error that the evidence was insufficient to support his convictions for first degree sexual assault of a child and incest and the Nebraska Supreme Court rejected this argument finding the evidence was sufficient to support those convictions. Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017).

Although Hibler's current argument is couched in the terms of an ineffective assistance of counsel claim, it is the same argument that was raised, and rejected on direct appeal, i.e., that the State failed to prove evidence of penetration as required for his convictions of first degree sexual assault and incest. Since Hibler's claim regarding the sufficiency of the evidence was already considered and rejected on direct appeal, we do not consider it again. A motion for postconviction relief cannot be used to secure further review of issues already litigated on direct appeal. See *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). Therefore, this assignment of error fails.

## (g) Jury Instructions 3 and 6

Hibler next argues that his appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective in failing to object to jury instructions 3 and 6. Those jury instructions instructed the jury regarding the charges of first degree sexual assault and incest which Hibler contends were not supported by the evidence since the State did not prove penetration.

In an appeal based on a claim of erroneous jury instructions, the appellant has the burden to show that the questioned instructions were prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006).

Here, Hibler states that the element of penetration was not sufficiently proven and therefore counsel should have objected to the instructions and should have proposed alternate instructions. The jury was instructed in instruction 3 regarding first degree sexual assault of a child and incest that:

> . . . Hibler . . . has been charged with three crimes. You must come to a separate decision regarding each crime.

Count 1: Sexual Assault of a Child, 1st degree

Depending on the evidence, you will either find . . . Hibler . . .:

1. Guilty of Sexual Assault of a Child, 1st degree or

2. Not Guilty of Sexual Assault of a Child, 1st degree.

A. Elements

The material elements which the Stale must prove by evidence beyond a reasonable doubt in order to convict . . . Hibler. . . of Count I are:

1. That . . . Hibler . . . did subject [the victim] to sexual penetration; and

2. That, at the time, [the victim] was under twelve years of age; and

3. That, at the time, . . . Hibler . . . was at least nineteen years of age or older, and

4. That . . . Hibler . . . did so on, about, or between October 1, 2015, and March 17, 2016, in Lancaster County, Nebraska.

B. Effect of Findings

If you decide the State proved each of these material elements beyond a reasonable doubt, you must find . . . Hibler . . . guilty of Count I. Otherwise, you must find him not guilty.

The State has the burden of proving beyond a reasonable doubt each of the material elements of Count I and this burden never shifts.

Count II: Incest

Depending on the evidence, you will either find . . . Hibler . . .:

1. Guilty of Incest or

2. Not Guilty of Incest

A. Elements

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict . . . Hibler . . . of Count II are:

1. That . . . Hibler . . . did subject [the victim] to sexual penetration; and

2. That . . . Hibler . . . did so knowingly; and

3. That, at the time, [the victim] was under eighteen years of age; and

4. That [the victim] is the child of . . . Hibler. . .; and

5. That . . . Hibler. . . did so on, about, or between October 1, 2015, and March 17, 2016, in Lancaster County, Nebraska.

B. Effect of Findings

If you decide the State proved each of these material elements beyond a reasonable doubt, you must find . . . Hibler . . . guilty of Count II. Otherwise, you must find him not guilty.

The State has the burden of proving beyond a reasonable doubt each of the material elements of Count II and this burden never shifts.

. . . .

The jury was also instructed in instruction 6 as to the definition of "sexual penetration":

As used in these Instructions:

. . . .

6. "Sexual Penetration" means sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of

the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen.

You are to use your common sense and that general knowledge that everyone has in determining the meaning of any other word referred to in these Instructions not otherwise defined in these Instruction.

The record is devoid of any indication that the jury instructions given were erroneous. Hibler's claim largely rests on his argument that the evidence was insufficient to support a finding of penetration and therefore the court should not have instructed the jury. However, the issue of whether the evidence adduced by the State was sufficient for the jury to determine that penetration occurred was decided by the Nebraska Supreme Court in Hibler's direct appeal. Instruction 3 specifically instructed the jury, inter alia, as to what they must find in order to convict the defendant of the crimes of first degree sexual assault of a child and incest under the Nebraska Statutes. Therefore, counsel was not ineffective for failing to object or propose alternate instructions on the elements of the crimes of first degree sexual assault of a child and incest, which required the State to prove penetration, as defined under Nebraska law.

Additionally, in instruction 6, the court provided the definition of "sexual penetration" as defined under Neb. Rev. Stat. § 28-318(6) (Reissue 2016) as directed in NJI 2d Crim. 4.6. We note that the definition of "sexual penetration" was amended subsequent to Hibler's trial. See § 28-318(6) (Cum. Supp. 2020).

Having found no error in the jury instructions and noting that Hibler has failed to assert what jury instructions should have been proposed by trial counsel or any objection that he claims trial counsel should have raised to the jury instructions, other than his unfounded claim that the State did not prove penetration, this assignment fails. Having found that trial counsel was not ineffective, appellate counsel cannot be ineffective for failing to preserve the assignment on direct appeal. *State v. Dubray*, 294 Neb. 937, 941, 885 N.W.2d 540, 547 (2016) (if trial counsel was not ineffective, then defendant was not prejudiced by appellate counsel's failure to raise issue).

## VI. CONCLUSION

In sum, having determined that the district court properly denied Hibler's motion for postconviction relief without an evidentiary hearing, we affirm.

AFFIRMED.